IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY T. LEE, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff-Intervenor | ) | |
|     and Amicus Curiae, | ) | |
| | ) | |
| NATIONAL EDUCATION | ) | CIVIL ACTION NO. |
| ASSOCIATION,INC., | ) | 2:70cv3102-MHT |
| | ) |     (WO) |
|     Plaintiff-Intervenor, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| COVINGTON COUNTY BOARD OF | ) | |
| EDUCATION, et al. | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION

In this longstanding school desegregation case,
the plaintiffs, a class of black students, obtained
relief from race discrimination in the operation of
a de jure segregated school system.  The defendants
are the Covington County Board of Education and its

members and superintendent, as well as the Alabama
State Board of Education, its members, the State
Superintendent of Education and the Governor of
Alabama.  The Covington County Board of Education and
its members and superintendent have moved for
declaration of unitary status and termination of this
litigation.  Based on the evidence presented, the
court concludes that the motion should be granted and
that this litigation should be terminated as to the
Covington County Board of Education and its members
and superintendent.


## I. BACKGROUND

### A. Early Litigation and
### the 1998 Consent Decree

This case began in 1963 when several black students
and their parents sued the Macon County Board of
Education and its superintendent seeking relief from the
continued operation of a racially segregated school

system.  On July 3, 1963, the United States was added as plaintiff-intervenor and amicus curiae in order that the public interest in the administration of justice would be represented.  The <u>Lee</u> litigation, as it is known, grew to involve 35 school districts throughout the State of Alabama, and, as part of that litigation, a desegregation plan for the Covington County Public Schools was ordered on August 6, 1969.[1]  A full history of the <u>Lee</u> litigation is set forth in detail in <u>Lee v. Russell County Bd. of Educ.</u>, 2002 WL 360000, at *1 (M.D. Ala. 2002) (Thompson, J.).

On February 12, 1997, this court entered an order affecting eleven school systems, stating that the court was "of the opinion that the parties should now move toward 'unitary status' ... and for the termination of the litigation [for the school systems] in these cases." On June 16, 1998, following extensive discovery and

_____

1. In October 1992, the Florala City School District was consolidated with the Covington County Public Schools.

3

negotiations by the parties, the court approved a consent decree finding that the Covington County School District had achieved unitary status in the areas of student assignment, transportation, facilities, and extra-curricular activities. Further remedial action was found to be necessary in the areas of faculty hiring and assignment and special education. Courts may allow partial or incremental dismissal of a school desegregation case before full compliance has been achieved in every area of school operations; jurisdiction is retained over the remaining parts of a desegregation case. <u>Freeman v. Pitts</u>, 503 U.S. 467, 490-91 (1992).

The parties agreed that, in order for the district to attain unitary status in the remaining areas, the board would undertake certain actions including developing policies and procedures in the identified areas to eliminate the remaining vestiges of the dual system. The consent decree set forth in detail the areas to be addressed and the actions to be undertaken. In other

4

words, the consent decree represented "a roadmap to the
end of judicial supervision" of the Covington County
school system.  NAACP v. Duval County Sch. Bd., 273 F.3d
960, 963 (11th Cir. 2001).[2]

The Covington County School District was required to
file a comprehensive report with the court each year, and
the plaintiff parties had the opportunity to advise the
school system of any concerns regarding compliance with
the terms of the 1998 consent decree.  Concerns raised by
the plaintiff parties were noted in annual progress
reports and discussed at yearly status conferences. The
board addressed these concerns through continued review
and modification of its programs. Impasses regarding the
sufficiency of the board's actions were referred to a
magistrate judge for mediation.  The 1998 consent decree

---

2. The parties identified two state-wide issues
remaining in this litigation, "special education" and
"facilities." The state-wide issues involving special
education were resolved and orders adopting the consent
decrees were entered on August 30, 2000, in the eleven
Lee cases, including this one.  Lee v. Butler County Bd.
of Educ., 183 F.Supp.2d 1359, 1363 (M.D. Ala. 2000)
(Thompson, J.).

provided that the board could file for dismissal of this
case three years after approval of the consent decree and
after filing the third annual report.

On April 22, 2005, the parties submitted an interim
consent agreement that set out specific actions to be
undertaken by the board prior to filing for unitary
status.  The court approved the consent agreement on
April 25, 2005, and enjoined the parties to comply with
its terms.


### B. The 2005 Motion for
### Declaration of Unitary Status

In accordance with the terms of the interim consent
agreement, the Covington County Board of Education filed
its motion for declaration of unitary status and
termination of this litigation on September 30, 2005.

The court required the school board to give all
plaintiff class members appropriate notice of the motion
as well as procedures for lodging objections. After the
court approved the notice form, the school board

6

published, in local newspapers over a three-week time period, notice of the proposed termination of this litigation and the date of the fairness hearing.  The notice also provided procedures for class members and interested persons to file comments and objections with the court regarding the proposed dismissal of this lawsuit.  Forms for objections and comments were made available at all public schools and the local school board office.  In addition to the published notice, copies of the unitary status motion, the 1998 consent decree, and all annual reports were made available at the local school board office and the offices of board counsel.  On January 4, 2005, the court held a fairness hearing on the motion for declaration of unitary status and termination.

The court concludes that the Covington County Board of Education complied with the directives of the court in providing adequate notice of the proposed dismissal to

class members as well as to the community.  Fed. R. Civ.
P. 23(e).

## II.  DISCUSSION

### A.  Standards for Termination of a
### School Desegregation Case

It has long been recognized that the goal of a school
desegregation case is to convert promptly from a de jure
segregated school system to a system without "white"
schools or "black" schools, but just schools.  Green v.
County School Bd. Of New Kent, 391 U.S. 430, 442 (1968).
The success of this effort leads to the goal of
ultimately returning control to the local school board,
as "local autonomy of school districts is a vital
national tradition."  Freeman v. Pitts, 503 U.S. 467, 490
(1992) (quoting Dayton Bd. of Education v. Brinkman, 433
U.S. 406, 410 (1977)).  Returning schools to the control
of local authorities "at the earliest practicable date is
essential to restore their true accountability in our
governmental system."  Id.

8

The ultimate inquiry concerning whether a school district operating under a school desegregation order to dismantle a de jure segregated school system should be declared unitary is whether the school district has complied in good faith with the desegregation decree, and whether the vestiges of prior de jure segregation have been eliminated to the extent practicable. NAACP, Jacksonville Branch v. Duval County Sch. Bd., 273 F.3d 960, 966 (11th Cir. 2001) (citing Missouri v. Jenkins, 515 U.S. 70, 88 (1995), and quoting Freeman v. Pitts, 503 U.S. 467, 492 (1992)); see also Manning v. Sch. Bd. of Hillsborough County, 244 F.3d 927, 942 (11th Cir. 2001), cert. denied, 534 U.S.824 (2001); Lockett v. Bd. of Educ. of Muscogee County, 111 F.3d 839, 843 (11th Cir. 1997).

In addition to these articulated constitutional standards, the Covington County Board of Education was required to comply with the contractual requirements of the 1998 consent decree and the 2005 interim consent agreement which set forth the steps the board was to take

to attain unitary status.  NAACP, Jacksonville Branch v. Duval County Schools, 273 F.3d 960 (11th Cir. 2001).  The parties agreed that the board would analyze and review programs and practices in each of the areas in which further actions were required. The board was to formulate and adopt procedures and practices designed specifically to address each of these areas.  The board was thus required to take specific actions to address concerns the parties argued were vestiges of the prior dual system, to ensure that the district was being operated on a nondiscriminatory basis.

The legal standards for dismissal of a school desegregation case were set forth in the 1998 consent decree as (1) whether the district has fully and satisfactorily complied with the court's decrees for a reasonable period of time, (2) whether the vestiges of past discrimination have been eliminated to the extent practicable, and (3) whether the district has demonstrated a good-faith commitment to the whole of the

court's decrees and to those provisions of the law and
the Constitution that were the predicate for judicial
intervention.  <u>Missouri v. Jenkins</u>, 515 U.S. 70, 87-89
(1995).  By emphasizing that the good-faith component has
two parts (that is, that a school district must show not
only past good-faith compliance but a good-faith
commitment to the future operation of the school system),
the parties looked both to past compliance efforts and to
a good-faith commitment to the future operation of the
school system through "specific policies, decisions, and
courses of action that extend into the future."  <u>Dowell
v. Bd. of Educ. of the Oklahoma City Public Schools</u>, 8
F.3d 1501, 1513 (10th Cir. 1993) (citations omitted).
Regardless, "[t]he measure of a desegregation plan is its
effectiveness."  <u>Davis v. Bd. of Sch. Comm'rs</u>, 402 U.S.
33, 37 (1971).

### B. Terms of the 1998 Consent Decree and Compliance Efforts

   1.   <u>Faculty and Administrator Hiring and Assignment</u>:
The Covington County Board of Education was required (1)
to take specific steps to increase the number of black
applicants in the pool from which it selects its teachers
and administrators to fill administrative and faculty
vacancies and (2) to develop policies and procedures to
ensure that faculty and staff were assigned to schools
across the district such that the proportion of minority
staff, faculty, and administrators at each school is
substantially the same as the ratio district-wide.
<u>Singleton v. Jackson Municipal Separate Sch. Dist.</u>, 419
F.2d 1211, 1218 (5th Cir. 1969).

   As evidenced by the annual reports filed with the
court, the district has expended considerable efforts to
recruit and employ minorities.   Significantly, the
district created the position of personnel director in
the central office and hired an African-American employee
to fill that position.   Under the leadership of the

12

personnel director, the district revised its employment procedures and developed and implemented a plan to increase the recruitment of minority faculty, staff, and administrators.

The district's faculty recruitment strategies included advertising all vacancies for at least 20 days; expanded on-site recruiting at historically black colleges and universities (HBCUs) in Alabama, and all colleges and universities in the immediate area that grant degrees in education; encouraging all faculty, particularly black faculty, to actively participate in recruitment efforts; seeking to establish internship opportunities with teacher education programs at HBCUs; contacting neighboring Alabama school districts with larger black applicant pools to ensure that those applicants are made aware of positions to be filled in the Covington County system; using the Alabama State Department of Education (ASDE) statewide computer-referral system; advertising vacancies through public

service announcements on Alabama radio stations and in newspapers with substantial minority audiences and readerships; filing notices of faculty and administrative vacancies with the ASDE Placement Service; and filing vacancy notices with HBCUs in Alabama, Florida, Georgia and Mississippi, and with the local chapters of the NAACP, SCLC, Alabama Democratic Conference, and New South Coalition.

The record reveals that the recruitment and placement efforts of the Covington County school system achieved positive results during the term of the 1998 consent decree. During the 1997-1998 school year, approximately 5 % of the 226 faculty and administrators in the Covington County school district were minorities. By the 2005-2006 school year, that percentage (and the underlying actual number) had more than doubled to over 10 %, with 25 minority employees out of 243 faculty and administrators. The following chart details the numbers

14

and percentages of employees at each school and at the central office.

### Faculty and Administrators By School

| 2005-06 | Total | Black | White | % Black |
|---|---|---|---|---|
| Fleeta JH | 22.50 | 3.00 | 19.50 | 13.33 |
| Florala City MS | 6.50 | 2.00 | 4.50 | 30.77 |
| Florala High | 16.50 | 2.00 | 14.50 | 12.12 |
| Pleasant Home | 38.00 | 2.00 | 36.00 | 5.26 |
| Red Level | 51.00 | 5.00 | 46.00 | 9.80 |
| Straughn Elem | 41.50 | 4.00 | 37.50 | 9.63 |
| Straughn High | 36.50 | 2.00 | 34.50 | 5.48 |
| W.S. Harlan Elem. | 22.50 | 3.00 | 19.50 | 13.33 |
| Central Office | 8.00 | 2.00 | 6.00 | 25.00 |
| District Total | 243.00 | 25.00 | 218.00 | 10.29 |

15

Numbers that are not whole integers reflect the fact that certain employees are assigned to more than one school, and split their time accordingly.

2. <u>Special Education</u>:  As stated, the state-wide issues involving special education were resolved by a consent decree entered on August 30, 2000.  <u>See</u> <u>Lee v. Butler County Bd. of Ed.</u>, 2000 WL 33680483 (M.D. Ala. 2000)(Thompson, J.).  According to the terms of the state-wide decree, any claims in the area of special education would be raised with the state defendants. Even if any such claim involving the Covington County school system were pending, it could not prevent a declaration of unitary status since the matter would be addressed with the state defendants as part of the commitments made under the state-wide decree.

3. <u>Future Action</u>: On February 5, 2002, the Covington County Board of Education adopted a resolution acknowledging the commitment of the school board to maintain the improvements in the district that resulted

from its efforts to comply with the consent decree.  The
board has stated its intention to adopt again the
resolution as board policy upon a declaration of unitary
status, thereby affirming its intent to provide continued
attention to the areas of concern raised by the plaintiff
parties.  This attention includes affirmation of the
policies and procedures set forth in each of the board's
annual reports to ensure fair and equal treatment of
faculty, staff and administrators.


### C.  January 2006 Fairness Hearing

     As stated, after the Covington County Board of
Education and its members and superintendent filed their
motion for declaration of unitary status, the court
required publication and notice of the proposed
dismissal, scheduled a fairness hearing, and established
procedures for filing comments and objections.  Three
written submissions were filed with the court, each
expressing concern regarding the possible impact that

dismissal would have on the recruitment and hiring of black teachers.

At the fairness hearing held on January 4, 2006, the court heard testimony offered by the Covington County Board of Education. Ronnie Driver, Superintendent of the Covington County schools, testified about the school district's affirmative efforts to comply with court orders and the gains in black faculty and administrative staff. Such efforts include hiring an outside consultant to review procedures and progress and conducting training sessions on hiring procedures and interview practices. Superintendent Driver stated that the number of minority employees will continue to increase, given the emphasis that the board has placed and will continue to place on recruitment.

Superintendent Driver also gave testimony explaining the rather wide variance in percentages of black faculty and administrators from school to school in the district. Such variance could indicate a <u>Singleton</u> violation.

Florala City Middle School draws particular attention with over 30 % minority faculty, nearly three times the district average. Driver explained that an African-American teacher had been transferred to Florala City Middle School--where previously there had been no minority faculty--in an effort to comply with the consent decree. Subsequently, a position became available for a math teacher at the school, and the district hired the most qualified applicant, an African-American.

Because the school has only six full-time faculty, this hire naturally increased the percentage of minority faculty to a level much higher than the district average. The record therefore reflects that this difference is not the result of Florala City Middle School's identification as a 'black' school--indeed, black students made up only 7.6 % of the school's student population in the 2004-2005 school year--but rather the result of the district's decision to hire the most qualified candidate for an open position, who in this case was African-American.

19

John Clark, President of the Covington County Board of Education, testified that the board is committed to continuing its good-faith compliance strategies, as evidenced by the resolution dated February 5, 2002. Clark stated that the board intends to reaffirm the resolution and adopt it again as board policy. He emphasized that the board will continue to vigorously recruit, assign, and attempt to retain black faculty and staff if the court declares the district unitary.

Anne Shakespeare, Personnel Director of the Covington County Schools, testified about the district's recruitment procedures. In addition to the procedures described above, Shakespeare stated that her contact with community leaders, including local pastors and churches, is an important part of the district's recruitment efforts. She described enhanced strategies to recruit and hire black faculty, including monthly meetings with school principals and use of the applicant database established under the 1998 consent decree. Shakespeare

stated that the superintendent and board reassured her that the district's recruitment strategies would continue after a finding of unitary status.

The testimony of the witnesses confirmed the information contained in the annual report filed by the Covington County Board of Education on September 14, 2005.   Counsel for the plaintiff parties stated no objection to the request for unitary status.


### III.   CONCLUSION

On the basis of the record evidence, witness testimony, and averments of counsel, the court finds that the Covington County Board of Education and its members and superintendent have met the standards entitling the school district to a declaration of unitary status and termination of this litigation.   The board has fully and satisfactorily complied with the orders of this court. The vestiges of the prior de jure segregated school system have been eliminated to the extent practicable.

The court also finds that the board and its members and superintendent have demonstrated a good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in this school system in the first instance through their compliance with the court's orders over the years, through their good-faith implementation of their contractual obligations under the 1998 consent decree, and through their adoption of specific policies and actions that extend into the future demonstrating their commitment to the operation of a school system in compliance with the Constitution.

The plaintiff parties have succeeded in the task they began decades ago to seek the end of the seemingly immovable <u>de jure</u> system of school segregation in Covington County. This lawsuit sought to bring the district into compliance with the constitutional requirement of equal protection under the law, and the court states today that they have succeeded. <u>NAACP,</u>

22

Jacksonville Branch v. Duval County Schools, 273 F.3d 960, 976 (11th Cir. 2001).  By its actions today, the court recognizes and congratulates the sustained efforts of the parties.  In so doing, the court notes, as the Eleventh Circuit stated in Duval County Schools, that "[t]he Board, and the people of [Covington County] who, in the end, govern their school system, must be aware that the door through which they leave the courthouse is not locked behind them.  They will undoubtedly find that this is so if they fail to maintain the unitary system [the court] conclude[s] exists today."  Id. at 976-77.

Therefore, with the judgment the court will enter today, control over the Covington County School System is properly returned to the Covington County Board of Education and its members and superintendent.  The motion for declaration of unitary status and termination of this litigation filed by the board and its members and superintendent will be granted, all outstanding orders and injunctions will be dissolved, and this litigation

23

dismissed as to the board and its members and superintendent.  However, the state defendants are not dismissed, and the orders dealing with the state-wide "special education" and "facilities" issues are not dissolved.

DONE, this the 6th  day of February, 2006.


    /s/ MYRON H. THOMPSON
    UNITED STATES DISTRICT JUDGE